Maranda v. The State of Ohio.

*Criminal law—Cross-examination of defendant as to another offense—Charge to jury—Special requests before argument —Section 13675, General Code—Error proceedings—Overruling motion for new trial—Bill of exceptions to contain complete evidence.*

1. Upon the trial of one charged with a crime, the accused, who offers himself as a witness, may be questioned, as such, on cross-examination, regarding a previous crime claimed to have been committed by him, which is so unrelated with the crime for which he is on trial as to be a collateral matter, but such examination may be allowed only for the purpose of affecting his credibility, and it is error for the state's attorney to question witnesses in detail concerning such collateral matter so as to magnify it into an issue in the case. Such error, however, is not grounds justifying a reversal of a judgment of conviction, where a careful reading of the whole record satisfies the reviewing court to a moral certainty that defendant was guilty and that the result of the trial would have been the same if such error had not been committed.

2. Section 13675, General Code, authorizes, but does not require, the trial court to charge the jury at the conclusion of all the evidence and before argument upon points of law applicable to the case requested by the state or the accused, and the refusal to so charge does not constitute error.

3. The presentation of certain charges in writing at the conclusion of the evidence, with a request "that the same be given by the court to the jury, in writing, before argument, not as a series, but separately," is not a request to the court to reduce to writing his charge given after the conclusion of the argument, as may be done under the provisions of subdivision 7 of Section 13675, General Code.

4. In order for this court to review the action of the trial judge on a motion for new trial on the ground of newly-discovered evidence, the facts upon which the trial judge acted must be brought before the reviewing court by a bill of exceptions to which is attached a certificate of the

trial judge to the effect that the bill of exceptions shows all the evidence introduced on the hearing of the motion for new trial.

(Decided April 3, 1923.)

ERROR: Court of Appeals for Summit county.

*Mr. N. M. Greenberger* and *Mr. John D. Hotchkiss,* for plaintiff in error.
*Mr. A. W. Doyle,* prosecuting attorney, and *Mr. W. B. Wanamaker,* assistant prosecuting attorney, for defendant in error.

WASHBURN, J. The plaintiff in error, Elizabeth Maranda, was indicted for the crime of arson. Being convicted and sentenced, she prosecutes error to this court.

Mrs. Maranda was the owner of some second-hand furniture, stored in a building on the lot where she lived, which she had formerly used in running a boarding house. She had a friend by the name of Mrs. O'Connor, who had had experience in running boarding houses, but who had no furniture. An arrangement was made between them by which Mrs. O'Connor rented a vacant house and moved the furniture of Mrs. Maranda into the house for the purpose of conducting a boarding house. This property she moved on December 26, 1921, and soon thereafter Mrs. Maranda had her furniture insured for $1,500—a sum greatly in excess of its value. She paid for the insurance on January 9, and on January 14 the building was set on fire and the house and some of the goods were damaged. The fire was plainly of an incendiary origin, there being several places in the house where there were what is known as

"plants"—places where kindling and paper and other combustible material were piled and saturated with oil—and the fire was extinguished soon enough to make its incendiary origin apparent. It is conclusively shown that the building was fired in several places. The fire occurred on Saturday night, and earlier in the day Mrs. O'Connor had moved all her belongings out of the house, leaving therein only the property of Mrs. Maranda.

The state did not depend upon circumstantial evidence alone to establish the guilt of the defendant. Mrs. O'Connor, who had not succeeded in obtaining any boarders, was in the building at the time it was set on fire, and she went out of the building just before the fire department arrived. Evidence was given by neighbors to the effect that just about the time the fire was discovered a woman who, as to dress and size, answered the description of Mrs. Maranda was seen leaving the building, and Mrs. O'Connor testified that Mrs. Maranda planned the fire and prepared the "plants" and set the building on fire before she left.

About six years previous to this fire Mrs. Maranda had had a fire in her house in another part of the city of Akron, which was thought at the time to be of an incendiary origin, and she was indicted and placed on trial for that offense, but at the close of the state's case the court ruled there was no proof of the *corpus delicti*, and by order of the court she was acquitted and discharged. The prosecuting attorney took exceptions and carried that case to the Supreme Court, and the Supreme Court decided that the trial court

committed error in directing the acquittal and discharge of Mrs. Maranda. (*State* v. *Maranda,* 94 Ohio St., 364.) During the investigation of the first fire, Mrs. Maranda was interviewed by representatives of the fire marshal's department of the state, and it was claimed that she then signed a confession of guilt as to the first fire.

These facts in reference to the first fire were known to Mrs. Maranda's attorneys, and to the state's attorney, in the trial of the case now under review, and her attorneys, believing that it would not be competent in this case to prove anything in reference to the former fire, made an application to the court before the jury was impaneled to have the court instruct the state's attorney to refrain from in any manner referring to the former fire in the trial of this case. That request was properly denied, but it served the purpose of challenging the attention of the trial judge to the situation and apprised him of the claim of the attorneys for Mrs. Maranda with reference to such matter.

In the examination of the jury, questions were propounded to the prospective jurors by the state's attorney in reference to their knowledge concerning this first fire, to which objection was made and exception taken. The court was not then asked to and did not caution the jurors in reference to the subject-matter of the inquiry.

In his opening statement to the jury, the state's attorney said that it would be developed by the evidence that when Mrs. Maranda was planning this fire she told Mrs. O'Connor about the first fire. Objection was made to this statement, and the court properly overruled the same; the state's

attorney then said that he expected the evidence
to show that Mrs. Maranda confessed to having
set the first fire. An objection being made to this
statement, the court sustained same, and, at the
request of counsel for Mrs. Maranda, directed the
jury to disregard all but what Mrs. Maranda said
to Mrs. O'Connor about the fire.

In his statement to the jury the state's attorney
stated that he expected to show that Mrs. Maranda
was what was known as a firebug. Objection was
taken to this statement, which objection was over-
ruled, but no further request was made to the
court, and the jury were not cautioned in reference
thereto. When Mrs. O'Connor was testifying as
to her conversation with Mrs. Maranda at the time
Mrs. Maranda planned the last fire, she said that
Mrs. Maranda had referred to the earlier fire, say-
ing that it was an easy matter to escape the con-
sequences of burning one's property. There was
no objection to this testimony, and it was so con-
nected by the defendant's own statements with
the later transaction as to be competent. The
court, however, not being requested, failed to cau-
tion the jury in reference to such evidence and the
purpose for which it might be considered.

The matter was again referred to when officers
testified as to what Mrs. Maranda said when she
was first asked to give a statement in reference
to the fire which is the subject of this trial. They
testified that she then stated, as a reason for her
refusal to give or sign a statement, that she had
"been railroaded before these men once before on
a fire, and they treated me—they beat me up and
abused me, and knocked me down in a chair, and

made me testify to a lie, and I am not going to do it this time.''

When the defendant, Mrs. Maranda, was on the stand, testifying in her own behalf, she was asked about her alleged conversation with Mrs. O'Connor as to the first fire, and the objection thereto being overruled she denied that she told Mrs. O'Connor that she set the first fire. Then she was asked, referring to the place of the first fire, ''The fact of the matter is, you did have a fire there, didn't you?''

The objection being overruled, and exception noted, she answered that she had had a fire, but that it was ''an accidental fire.''

Then the state's attorney attempted to question her concerning the details of that fire, and the court sustained objections to such questions.

Later the state's attorney, referring to the place of the first fire, put the following question to Mrs. Maranda: ''And you set that place on fire, didn't you?''

At this point the court adjourned until the next day, and upon reconvening, the court, before the jury were called in, ruled that the matter inquired about, although collateral, involved moral turpitude, and therefore it was within the discretion of the court to permit the question to be asked as bearing upon the credibility of the witness. Exception was taken, and Mrs. Maranda answered that she ''absolutely did not, nor never set no fire at no house.''

Then, over objection and exception, she was asked if she did not sign a written confession as to the first fire, and she was finally shown her alleged confession with regard to the former fire,

and was asked if the signature thereto was hers, and during the examination she both denied and inferentially admitted the signature, and finally said that she signed the paper, but did not know what it contained, and that her signature thereto was obtained by duress, she being subjected to very cruel and inhuman treatment by the fire marshal's representatives, and she then voluntarily testified in circumstantial detail as to such cruelty. The state offered the alleged confession and the court rejected the same, and then in rebuttal the state placed upon the stand the two representatives of the fire marshal's department who had obtained such alleged confession and offered to prove by them that the confession was voluntary and that there was no duress or coercion practiced upon her; but the court sustained the objections to such evidence. Notwithstanding the ruling of the court, the state's attorney asked questions of said witnesses in circumstantial detail, covering all the acts of cruelty and coercion complained of by the defendant Mrs. Maranda, the court in each instance sustaining the objection of defendant's counsel.

The first fire did not concern the same building or property as the second fire, and there was no such similarity of planning or details of preparation, nor such close connection of time as made evidence of such former fire competent in the state's case, or at any time, for the purpose of creating a probability of guilt as to the second fire. The state did not specifically make such claim, but did claim that on cross-examination of Mrs. Maranda it had the right to ask her concerning this first fire for the purpose of affecting

her credibility. Counsel for Mrs. Maranda claim that the matter inquired about had no legitimate bearing upon her credibility, and that even if the state had a right to question Mrs. Maranda as to this matter, for the purpose of affecting her credibility, it was bound by her answers in which she said she did not commit arson with respect to the first fire, and that the state should not have been permitted to press the examination by inquiring as to the alleged confession, and that even if the allowance of the questions as to her confession was not prejudicial error, still, the state being bound by her answers and not being permitted to contradict her in reference thereto, it was misconduct on the part of the state's attorney, constituting prejudicial error, for him to repeatedly offer to contradict her by many questions to the witnesses, which covered in circumstantial detail all she had said in reference to the circumstances under which said alleged confession was obtained.

As has been said, during the trial the court did not caution the jury in reference to this subject-matter, but in the charge the jury were properly cautioned in reference to such matter, as follows:

"In cross-examination, questions were asked of the defendant, here, about other fires, and whether or not she had set fire to some other property, some years ago. Questions were also asked of Mrs. Maranda, and she gave answers, regarding whether or not she had confessed to setting fire to some other building.

"There is no issue in this case as to whether or not any other building was burned, or whether or not she set fire to any other building. You are not called upon to consider that question, nor to

determine that question, nor any part of it. Those questions and answers are permitted for the sole and only purpose of enabling you to judge of the credibility of the witness and the weight which you will attach to her testimony. That is the only purpose for which you may consider it.

"Counsel, at some time during the trial of this case, said something about some other arson case, and the alleged result of that case. There is nothing in the evidence in this case about any other case, and you cannot assume that there ever was one, or that there was any result to it. There being no evidence on that case, and there being no issue as to it, you will wholly disregard that matter. *   *   *

"You will also remember that the arguments and statements made by counsel in this case are not evidence, and must not be so considered by you."

The rule of law is fundamentally sound that a person may not be convicted of the crime charged upon a certain date by showing that upon other dates he committed other crimes and offenses. There are certain classes of cases in which this humane and just proposition of law does not apply—such as where guilty knowledge, or a specific intent, is a necessary element of the offense, or where the other acts tend to establish a general scheme or system of criminal conduct. In a case like the case at bar, where the other alleged crime was so remote in time and so unrelated in similarity, evidence in reference thereto was clearly not competent *for the purpose of creating a probability of guilt,* but the defendant, having voluntarily offered herself as a witness, was subject to

cross-examination, *as such,* even though such cross-examination was in reference to a claimed former crime committed by her, if it had a legitimate bearing upon her credibility, and she did not claim her privilege to decline to answer on the ground that her answer might tend to degrade or disgrace her.  We do not find that the matter inquired about was so remote or of such a character as not to have any legitimate bearing on her credibility—the extent of such bearing and the weight to be given to such a matter being for the jury to determine.

As to the latitude which should be permitted in cross-examination of a witness as to collateral matters affecting his credibility, there seems to have been from early times two views: one that great liberality should be allowed in such cross-examination, provided the matters inquired about tend to affect the credit of the witness, because, as parties are frequently surprised by witnesses who confront them, there is no other adequate means of ascertaining what credit is due their testimony, and because, if a witness may not be questioned as to his character, the property, liberty or life of a party must often be in danger.  The other view is that the obligation of his oath binds a witness to speak only the truth touching the matters in issue; that such particular facts as whether the witness has been in jail for felony, or suffered some infamous punishment, or the like, cannot form any part of the issue, and that no such latitude of cross-examination should be permitted as would tend to discourage witnesses from appearing in courts of justice to testify.  Ohio has adopted the former view—that, governed by the

discretion vested in the trial judge, a witness may be asked questions on cross-examination tending to disclose his own character, and that he may therefore be interrogated on specific acts or transactions of his past life, if they are not too remote in time and have a legitimate bearing upon his credit as a witness.

"Where upon a trial of an indictment the defendant offers himself as a witness, and testifies in his own behalf, he thereby subjects himself to the same rules, and may be called on to submit to the same tests as to his credibility as may legally be applied to other witnesses.

"The limits of such a cross-examination on matters not relevant to the issue for the purpose of judging of his character and credit from his own voluntary admissions, rest in the sound discretion of the court trying the cause, and the judgment will not be reversed unless it appears from the record that such discretion has been abused to the prejudice of the party." *Hanoff* v. *State,* 37 Ohio St., 178.

Where the defendant on trial is a witness in his own behalf, and the collateral matter inquired about on cross-examination is a previous crime committed by him which is likely to be considered by the jury as evidence tending to prove him guilty of the offense charged, where in fact the only purpose for which it may rightly be considered is as to the credibility of the witness, it is generally recognized that such evidence, even if it only creates a suspicion of guilt of a previous crime, is liable to be considered as proof of guilt of the crime for which defendant is being tried, and it would clearly be the duty of the trial judge, if re-

quested to do so, to then and there instruct the jurors as to the purpose for which the evidence may be considered, and if such examination results in admissions of former crimes which are collateral to the issues it would be the duty of the trial judge, even if not requested so to do, to caution the jurors at the time such evidence is introduced not to consider the same as evidence of guilt of the crime for which defendant is being tried.

We will not attempt to set forth the many questions which the court permitted the prosecuting attorney to ask Mrs. Maranda in reference to the first fire, or concerning her confession, or her connection therewith; but the court allowed great latitude in reference thereto, many pages of the record being taken up with questions in reference to that matter.

We recognize the discretionary power vested in a trial judge as to the limits of cross-examination on matters not relevant to the issue, and we also recognize the wisdom of this rule, because the trial judge is present and fully cognizant of all that is transpiring at the trial. Still, we cannot approve of the latitude allowed in this case. The state's attorney, from the beginning, and all through the trial, except in the closing arguments, was apparently seeking the benefit of disclosures as to the first fire, for the purpose of creating a probability of guilt in reference to the fire involved in the crime for which Mrs. Maranda was being tried. That attitude may have been due to an abiding conviction of the guilt of Mrs. Maranda on the part of the state's attorney, and his consequent zeal in what he considered to be the discharge of his duty. If Mrs. Maranda had been merely a wit-

ness, and the examination as to the first fire had been merely for the purpose of affecting her credibility as a witness, we have no idea that the state's attorney would have pursued the inquiry to the extent he did, nor that he would have been permitted to do so by the court.

Where a defendant on trial is inquired of as to a previous crime claimed to have been committed by him, and which is so unrelated and unconnected with the crime for which he is on trial as to be collateral matter, he may be asked not only as to whether he committed the crime, but as to whether or not he confessed that he did it; but his answers in reference thereto cannot be contradicted except by proof of a *conviction* of such crime. *Coble* v. *State*, 31 Ohio St., 100.

Notwithstanding the fact that the state was bound by the answers which Mrs. Maranda gave in reference to this matter, which was irrelevant to the issues in the case, the state's attorney in rebuttal placed upon the stand representatives of the fire marshal's department and offered to contradict the answers made by Mrs. Maranda. The court properly ruled that such contradictory evidence was not competent. But, notwithstanding the rule of the court as to the proffered evidence of the first witness in rebuttal, the state's attorney put on the second witness and asked him in detail as to all the matters which the court had already ruled were incompetent. By that time, at least, the state's attorney could not have had any reasonable ground to expect that the witness would be permitted to answer the questions, and, in view of the extent of the cross-examination of Mrs. Maranda that was permitted as to this collateral

matter, the effect of the state attorney's action
in rebuttal was to magnify this irrelevant matter
into an issue in the case. In view of this situation,
which was apparent, the trial judge should have
done something more than merely sustain the ob-
jections. He could very properly have stopped
the inquiry, or he could very appropriately have
cautioned the jury in the very language which he
did use later in his charge to the jury, as herein-
before quoted.

We are clearly of the opinion that there was
error on the part of the trial judge in permitting
this collateral matter to be made of so much im-
portance, merely because on cross-examination
some inquiry in reference thereto was permissible
as bearing upon the credibility of Mrs. Maranda
as a witness.

The important question is: Was such error
merely harmless, or did it prejudice the rights of
the accused in the sense that it contributed to bring
about a conviction which would not have likely re-
sulted from the other evidence in the case?

"In order to justify the reversal of a judgment
in error, the record must affirmatively show, not
only that error intervened, but that it was to the
prejudice of the party seeking to take advantage
of it." *Scovern* v. *State*, 6 Ohio St., 288.

"A judgment will not be reversed merely be-
cause the record shows error, to which exception
was taken. The error, to be ground of reversal,
must be prejudicial to the rights of the party com-
plaining. And this is the rule in criminal as well
as civil cases." *McHugh* v. *State*, 42 Ohio St., 154.

While the case at bar is not a case where the
cross-examination was unduly limited, the estab-

lished rule in reference to such a situation has some application, and it seems to be settled that "reviewing courts will not reverse a judgment of a trial court because of a limitation of cross-examination of a witness, unless it clearly appears that there has been an abuse of discretion therein, resulting in manifest prejudice to the complaining party."

The basis for the rules announced in these cases is that in the trial of cases in these days, objections and exceptions are not to be tested by the over-refined technicalities that were the outgrowth of a system of criminal laws of unreasonable severity, which created in courts a desire to shield those charged with crime from excessive and cruel punishment; it is the settled rule of the law of this state to disregard defects and imperfections which do not tend to prejudice the substantial rights of the defendant on the merits.

Upon a careful reading of the whole record, we are satisfied of the guilt of the defendant to a moral certainty, and that had such error not been committed the result of the trial would not have been different than it was, and that therefore such error was not prejudicial, justifying a reversal of the judgment of conviction.

During the trial there was published in a local newspaper an article concerning the case which purported to give information in reference to said alleged confession, before an attempt was made to introduce it at the trial. Counsel for Mrs. Maranda thought that the information for the article had been furnished by the state's attorney, and the next morning, in the absence of the jury, counsel called the attention of the court to the article and

asked that the court reprimand the state's attorney. No proof was offered then or on the motion for a new trial that the state's attorney had furnished such information or that any of the jurors read or heard of the article during the trial, and the court was not asked to say anything to the jury concerning same. We find no error in the court's failure to stop the trial and try the state's attorney for misconduct.

While counsel for Mrs. Maranda did not request, and seemingly did not desire the court to call the matter to the attention of the jury, and caution them in reference thereto, still it would have been proper for the court, as a part of the usual caution given to the jurors at the next adjournment, to have instructed the jurors generally not to read any newspaper accounts of the progress of the trial or permit anyone to talk to them concerning same, and to emphasize the fact that it would be the duty of the jury to determine the issues from the evidence permitted to be given in open court, and that they should not consider information obtained from any other source, and that insinuations made by attorneys during the trial were not evidence.

Indeed, the record discloses conduct on the part of attorneys on both sides of the trial table which made special caution to the jury during the trial very appropriate. Seldom have we read a record where attorneys were permitted to indulge in so much bantering, and in irrelevant and improper talk across the trial table, which gave the case the aspect of a contest between two sets of attorneys, rather than a dignified and orderly trial between the prisoner at the bar and the state of Ohio.

Both sides offended in this respect, and we make no attempt to apportion the blame, but in reference thereto, in view of the impelling evidence of guilt contained in the record, we find no such error or misconduct prejudicial to the plaintiff in error as justifies a reversal of the judgment.

At the close of all the evidence in the case, counsel for Mrs. Maranda presented certain charges in writing, and requested "that the same be given by the court to the jury, in writing, before argument, not as a series, but separately." To this request the court replied: "I will look these requests over, and whatever I think is proper to be given, I will give in the general charge." Counsel for Mrs. Maranda then inquired, "Your Honor will not give any charge before argument?" and the court replied, "There is no provision by law for it, but you have a right to make these requests, and I will give so much of them as I think is proper, in the general charge." Counsel for Mrs. Maranda then said, "Save our exception as to each and every one." Then followed the argument to the jury and immediately thereafter the general charge of the court, at the conclusion of which the judge inquired, "Is there any other subject-matter upon which counsel think the jury should be instructed?" and counsel for Mrs. Maranda replied, "Why, Your Honor, we haven't any just in mind now," whereupon the jury retired to their room and counsel for Mrs. Maranda had noted upon the record a general exception to the charge.

Counsel for Mrs. Maranda doubting the wisdom or soundness of the decision of the Supreme Court in *Wertenberger* v. *State*, 99 Ohio St., 353, holding (page 357) that "the statute authorizes but does

not require the giving of a proper charge before argument upon the request of counsel for either party," nevertheless claim that what has heretofore been set forth as to what occurred required the trial court, in compliance with subdivision 7 of Section 13675, General Code, to send to the jury room such of said special requests as were given in or covered by the general charge of the court, and it is urged that the court's failure to do so is reversible error, although no request for such procedure was made other than as indicated by what has been quoted.

Under the case above referred to, the refusal of the court to give the charges before argument was not error, and we hold that counsel's request was simply a request to give the charges before argument, and was not in any sense a request to the court to reduce to writing his charge given after the conclusion of the argument, as is provided may be done in subdivision 7, Section 13675, General Code. That section provides that if counsel request it before the argument to the jury is commenced, the trial judge shall reduce to writing his general charge to the jury, and that such charge, together with such special instructions as are given to the jury in writing at the request of counsel, "shall be taken by the jury in their retirement." We find that this charge of error is not sustained. No other complaint was made in oral argument or in the brief of counsel as to the charge of the court.

It is also claimed that there was error in the court's ruling permitting certain witnesses to give their estimation of the value of Mrs. Maranda's personal property, which was in the house which

was set on fire. It was claimed that these witnesses who viewed the property very soon after the fire, for the purpose of estimating its value, were not able to approximately enumerate or describe the property; that some of it had been damaged by fire, and that some of it may have been removed after the fire, and before they inspected it, and that therefore their testimony was incompetent. In view of what the record discloses, we find that this objection goes to the weight rather than to the competency of the evidence.

It is also claimed that these witnesses did not qualify as experts on second-hand furniture. We hold that they did sufficiently qualify to permit their evidence to go to the jury. It must be remembered that the object of this evidence was not to obtain an exact valuation of the property, but was for the purpose of showing whether or not there was a glaring discrepancy between the value of the property and the amount for which Mrs. Maranda had had it insured just before this fire. Attention is called to the fact that the record discloses that before these witnesses testified, Mrs. O'Connor had described this property in such detail as to enable jurors, without any expert testimony, to determine, from a knowledge and judgment which all jurors are presumed to have as to matters of common knowledge, that this property, which Mrs. Maranda had herself purchased second-hand, and which had been used in boarding houses and moved and stored, was not anywhere near the value that she had it insured for. We find no prejudicial error in reference to this matter.

The one remaining error complained of is the claimed error of the court in overruling the mo-

tion for a new trial on the ground of newly-discovered evidence.

We learn from the brief that after the motion for a new trial had been overruled, and judgment and sentence had been pronounced and entered on the verdict, certain evidence was discovered by Mrs. Maranda, and from an inspection of the certificate of docket and journal entries we learn that the motion for new trial was overruled and sentence pronounced on the 31st day of May, 1922, and that on August 4, 1922, a second motion for new trial was filed, which was overruled on the 7th day of August, 1922. There is no bill of exceptions showing what proof was offered as to newly-discovered evidence upon the hearing of the second motion for new trial on the 7th day of August, 1922.

Section 11579, General Code, provides that the motion on the ground of newly-discovered evidence must be sustained by affidavits or depositions, which may be controverted by affidavits or depositions. The action of the trial judge must therefore depend upon what he finds the facts to be, and we can review that action of the court only when the facts upon which he acted are brought before us by a bill of exceptions, to which is attached a certificate of the trial judge to the effect that the bill of exceptions shows all of the evidence introduced on the hearing for a motion for new trial. *Berman* v. *State*, 16 C. C. (N. S.), 106.

The fact that there was attached to the motion for a new trial certain affidavits does not authorize us to consider the same. *Montgomery* v. *State*, 4 O. C. D., 199; *Schultz* v. *State*, 32 Ohio St., 276, and *Goldsmith* v. *State*, 30 Ohio St., 208.

But if we could properly consider the same, our conclusion would be that the second motion for new trial was properly overruled, because the newly-discovered evidence was simply cumulative, or impeaching, in character. *State* v. *Lopa*, 96 Ohio St., 410.

We believe mention has been made of all the errors complained of in the argument or brief of counsel. Upon a review of the whole record, notwithstanding the irregularities referred to, we are satisfied that the defendant was proven guilty beyond a reasonable doubt and that substantial justice has been done, and the judgment is therefore affirmed.

*Judgment affirmed.*

FUNK, P. J., and PARDEE, J., concur.