HAGANS *v.* THE STATE OF OHIO.

(Decided April 30, 1935.)

*Messrs. Wheeler & Ely* and *Mr. Geo. D. Klein,* for plaintiff in error.

*Mr. Russel E. Lyons,* prosecuting attorney, for defendant in error.

SHERICK, J.   Williard M. Hagans, a former Clerk of Courts of Coshocton county, and thereby an attache of this court, was charged and convicted of having forged the payees' endorsements upon five certain checks issued by him as clerk of courts in favor of parties lawfully entitled to certain sums which had

been paid into his office, such sums being ordered disbursed by him by the Court of Common Pleas. The accused also stands charged and convicted of having uttered these forged endorsements. Error is now prosecuted to this court from the judgment entered on the verdict. As the matters involved present a most reprehensible course of conduct in a public official, if true, and inasmuch as the accused was a former officer of this court, it is the duty and purpose of this, a reviewing court, to examine with exceeding and particular care the errors that are claimed to have intervened in the trial of this cause.

It is first charged that the state's evidence was insufficient to warrant conviction, particularly in that it was not such proof as could establish beyond a reasonable doubt guilt of the offenses charged in the ten counts of the indictment, because of the fact that actual proof of the charges was made only by the evidence of an expert witness, who was discredited by a defense expert who testified adversely to him. As a second ground of error it is urged that the trial court erred in its refusal to sustain the defense motion to discharge the jury and continue the case, when it transpired during the course of trial that the local newspaper had published two articles, laudatory in character, of the state's expert witness. It is claimed that these were inspired and were read by the jurors, and that they created a prejudice against the accused which resulted in a verdict of guilty. The third claimed error is in the admission in evidence of a certain document known as state's "Exhibit R." The other errors complained of by the petition in error are either embraced within those enumerated or have been abandoned in brief and oral argument, and therefore they will not be further considered other than to say that contrary to rule we have examined the same and find no error therein.

We have painstakingly read the entire record in this

case in order to ascertain the truth of the first claimed error, and we shall as briefly as possible review such other evidence as would support the proof offered by the state's expert witness. In the first instance the experts agree that the endorsements on three of the checks are forgeries, that two of these were cashed at the office of the clerk of courts, and that one of them was so cashed on the last day of Hagans' term of office. All five of these specific instances represent forgeries of another's signature, without knowledge by the forger of the style of writing of those whose signatures were forged. In such cases it is common knowledge that similarity of letter characters between the forged document and the known characteristics of the one charged with forgery are most important in establishing proof of the overt act. Yet we find on page 159 of the record that the defense expert in answer to the query, ''It does not mean anything to you, the similarity of letters?'' replied, ''No sir.'' Without doubt this answer, coupled with certain clear instances of similarity which the jury might readily perceive upon examination, caused the jury to view the testimony of the defense expert with considerable suspicion.

It is admitted that Hagans wrote all of these checks; that all were issued two and four years after the moneys had been paid into the clerk's hand; that no deputy clerk issued, mailed or cashed these checks; that the addresses of four of the payees were unknown to the clerk's office; that the checks could not therefore have been mailed; that three were cashed at the clerk's office and the other two at places frequented by Hagans; that four payees resided out of the state and that their checks bear no foreign bank endorsements; that these four payees had not been within the state or authorized anyone to procure these checks for them; that one payee had died prior to the date of issue of his check; that three checks were issued on the same date, two of which were cashed at the clerk's office on differ-

ent dates, that the forger must have returned to that office, and that the third check of that date was endorsed and cashed by a friend of the accused; that four of these checks were issued to non-resident strangers, who, if present, were not required to receipt the clerk's docket; that in the clerk's office a practice was engaged in during Hagans' regime, of cashing checks issued out of available cash; and that Hagans reimbursed the clerk's fund upon request of a state examiner after his term of office in the amount of those five checks without requesting to see the forged endorsements, and, further, made no attempt to apprehend the forger. These facts, in conjunction with the positive declaration of the state's expert, establish a chain of circumstances from which the jury might well have concluded, as it did determine, that Hagans, beyond a reasonable doubt, was guilty of the crimes charged; and for this court to otherwise conclude would be but to substitute our judgment for that of the jury. This we may not lawfully do, for the finding of facts is strictly within the jury's province, which no court may invade without just cause.

Did the newspaper publications influence the jury and deny the accused a fair and impartial trial? We do not think so. We find these articles attached to the record, but we do not find them to have ever been admitted in evidence. Neither do we find that it was insisted upon that the jury be polled as to whether they had read the articles and were influenced by them. The jury thereafter had the state's expert before it, and even if they had read the articles, they then had opportunity to form an opinion of his character and ability and determine the weight to be given his opinion, and the sufficiency of the evidence upon which it was based. The record further discloses that the court very properly at the time, and in no uncertain terms, instructed the jury that if they had read the articles to disregard them entirely. It should not hastily be presumed that the jury disregarded the court's instructions. We

have read these articles. They contain no recitation of facts or expression of opinion as to Hagans' guilt other than to say that the indictment was procured because of the opinion of the state's expert witness. The jury thereafter saw and heard that witness testify at length. It could and did then value that opinion at its actual worth. We are unable to perceive wherein the accused was prejudiced by these articles. A like claim was made in the case of *Maranda* v. *State,* 17 Ohio App., 479, at pages 493 and 494, where a like conclusion was reached.

We find that state's "Exhibit R," which is complained of, bears two signatures of L. M. Noland. It is also there recited that "the above signatures were witnessed by Robert M. Horn, State Examiner. Mrs. Horn and Mrs. Noland were also present." It is claimed that this notation made the document incompetent in evidence. This paper had been procured by the examiner at the request of the state's expert as a "standard" for comparison with the Noland endorsement appearing on one of the checks. It was exhibited to Noland on the stand and identified by him as containing his signatures. It was then objected to. It was only admitted for the purpose of providing a standard of comparison with Noland's purported endorsement on the check in which he appeared as payee. It was used for no other purpose. The notation simply made it possible for positive identification by Noland and could in no ulterior way have influenced the state's expert. We are unable to conceive by any flight of fancy how the accused could have been prejudiced by this notation. The admission of this document was in no way erroneous.

Finding no error in this record prejudicial to the accused the judgment must be and hereby is affirmed.

*Judgment affirmed.*

LEMERT, P. J., and MONTGOMERY, J., concur.