**STATE, Appellee v. KENNEDY, Appellant.**

Ohio Appeals, First District, Butler County.

No. 855.   Decided May 3, 1943.

Mr. Paul A. Baden, prosecuting attorney, Hamilton, and Mr. Marc A. Fiehrer, asst. prosecuting attorney, Hamilton, for appellee.

Mr. Arthur C. Fricke, Cincinnati, and Messrs. Wonnell & Brown, Hamilton, for appellant.

**OPINION**

By MATTHEWS, J.

The defendant-appellant was convicted of murder in the second degree, and sentenced to the penitentiary for life. This appeal is from that judgment of conviction.

The homicide took place in the defendant's place of business in the City of Hamilton, where he conducted a restaurant and beer saloon.

The defendant admitted that he fired the shot that killed Dillard Peters, the decedent, and defended on the ground that he acted in self-defense.

The defendant took the witness stand and testified to circumstances, which, if believed, would have justified the jury in concluding that he acted in self-defense. He testified that no other witness was present at the time, and no witness took the stand to contradict that statement.

The homicide took place at about 9:30 o'clock at night. The defendant and decedent had spent most of that day together on a trip to Cincinnati. They got back to defendant's cafe around 6:00, P. M., and were in or near the cafe from that time until the killing occurred.

There was evidence that both had been drinking beer during the day and that each was in a quarrelsome mood and had quarreled with others, but not with one another, until a dispute arose over a suit of clothes which the defendant had purchased in Cincinnati that day. About the only thing that is clear on that point is that the decedent wanted the suit and the defendant didn't want him to have it unless he paid in cash for it. It doesn't appear that the decedent had any right to claim the suit unless it be that the defendant had

said that he had bought the suit for him, to which one witness testified.

Between 7:00, P. M., and 9:00, P. M., the defendant with the assistance of others ejected the decedent from the cafe twice for violent conduct toward the defendant and others.

According to the defendant the decedent returned for a third time just as he was about to close his place for the night or until early in the morning, when employees in a neighboring manufacturing plant would patronize his place. The decedent entered walking toward the defendant rapidly with one hand behind his back. The defendant was behind the bar behind which was the defendant at the time of the shooting. Defendant claims self-defense and that the deceased he did so was uttering obscene and threatening language of and toward the defendant. When the decedent reached the end of the bar and was apparently going behind it where defendant was, the defendant took a pistol from a drawer and shot him in the chest. The decedent turned and walked about ten feet and fell. He died almost immediately.

We think the trial court accurately summarized the evidence in overruling the motion for a new trial. The Court said:

"The shooting occurred in the cafe of defendant and the evidence of the state showed that the deceased was found lying on the floor a considerable distance from the front of the bar behind which was defendant at the time of the shooting. Defendant claims self-defense and that the deceased was coming around the end of the bar toward him when he shot."

"Therefore, there were the circumstances of the location of the deceased's body and the fact that he had no weapon on him to indicate that deceased was making a direct attack on defendant at the time of the shooting. Against this was the testimony of the defendant heretofore referred to. Thus it became a question of fact for the jury to decide in what manner the shooting actually took place."

There were, of course, many circumstances which were, or could have been, the subject of legitimate argument as to inferences that should be drawn.

In view of the law placing the burden upon the defendant of proving self-defense (12 O. Jur. 306) we are of the opinion that it could not be said as a matter of law that the defendant had established that defense, and as he admitted firing the

shot that caused the death the issue of whether the circumstances showed beyond a reasonable doubt that the defendant was guilty of either murder in the second degree or of the included offense of manslaughter was for the jury to determine. If the shooting was not excusable on the ground that the shot was fired in self-defense, the defendant was guilty of one or the other. No verdict of guilty of a lesser offense would be justified and no charge thereon should have been given. **State v. Vancak, 90 Oh St 211; Lyon v State, 116 Oh St 265; Zarbo v State, 18 Abs. 145.**

The issues were submitted to the jury which resolved them against the defendant, but it is urged that errors were committed at the trial that make it necessary to set the verdict aside.

The most serious—and as we find fatal—error results from the latitude allowed in cross-examination of the defendant. Anticipating that it was the purpose of the prosecuting attorney to pursue this course in cross-examination, counsel for defendant called the court's attention to it at the beginning of the trial, and, when, notwithstanding the warning, the prosecutor pursued it, defendant's counsel made his objection known at each successive stage. It was not inadvertent. The trial court permitted the cross-examination on the theory that it was competent on the issue of defendant's credibility as a witness and instructed the jury that it should consider it for that purpose only.

This cross-examination consisted in an effort to prove certain incidents in the defendant's life over a period of more than twenty years. He was asked if he had not had a quarrel with Joe Long in which he had shot him, and he answered that it was in self-defense. He was asked whether he had not been indicted for receiving stolen property in 1913, and on another occasion and had pleaded guilty. He denied it. He was asked whether he had quarreled with Louis Seberting in 1913 and had cut him across the abdomen. He answered that he had acted in self-defense. Finally, he was asked whether he had had an altercation in 1937 with his brother-in-law in which he had shot to death his sister and shot his brother-in-law. He denied that he had shot his sister and admitted that he had shot and killed her husband and stated that he had done this in defending his sister from a murderous attack by her husband.

There was no effort made by the prosecutor to prove defendant's conviction of any crime, and when counsel for de-

fendant produced the court records, it was admitted that there had never been any conviction of any offense excepting in 1915 for receiving stolen property, when he was fined $1.00 and the costs.

The prosecuting attorney used this cross-examination in his argument not only to weaken the defendant's credibility as a witness, but also to indicate the likelihood that he would commit an unjustifiable act of violence.

It should be noted here that the defendant did not place either his character or reputation in issue, either for truth or veracity, or as a peaceable or law-abiding person.

To support the validity of this cross-examination and the argument based on it, the prosecuting attorney refers to §13444-19 GC, making like acts or other acts of the defendant competent to show motive, intent, absence of mistake or accident, or scheme, plan or system in doing the act in question, even though such evidence may show or tend to show the commission of another crime. That that section is no justification for cross-examination as to other arrests or accusations is clear and that is substantially all this cross-examination amounted to. It did not show acts, scheme, plan or system of defendant but showed acts by others against him. To the extent that the cross-examination incidentally showed acts of defendant such acts had no tendency and could have had no tendency to prove any issue in this case.

Chief reliance is placed upon **Wroe v State, 20 Oh St 460,** and **Hanoff v State, 37 Oh St 178,** to support this cross-examination. However, as we construe those cases all they decide is that the limits of cross-examination upon matters irrelevant to the issues except as they reflect upon the credibility of the witness rests in the sound discretion of the court, but neither case countenances asking the accused questions, the answers to which would to the knowledge of the examiner discredit him and create a prejudice against him without in any way reflecting upon his veracity. Such examination, as is said in **Wroe v State, supra,** "ought to be excluded when a disparaging course of examination seems unjust to the witness, and uncalled for by the circumstances of the case." And in **Hanoff v State, supra,** the court said that a conviction would not be reversed for a ruling on the scope of cross-examination upon collateral matters "unless it appears from the record that such discretion has been abused to the prejudice of the party."

We think this case falls within the principle of the case of **Wagner v State, 115 Oh St 136,** in which the accused was asked whether he had not been indicted for other offenses and ad-

mitted that he had. No effort was made to prove any convictions. On this subject the Court said at page 137:

"It is evident that the state had no information concerning any such convictions. Manifestly these questions were asked for the sole purpose of discrediting Wagner before the jury. Questions of this kind are often permitted on cross-examination as being preliminary to the latter showing that in fact the indictments inquired about resulted in convictions. When the state has no such further evidence, or produces none, then questions of this character become incompetent for any purpose, and, when counsel for the state knows that no convictions attended the indictments inquired about, then this line of cross-examination is wholly unfair, and is highly prejudicial to the accused."

We hold that in view of the issues in this case and the fact that the defendant had not placed his character or reputation for peace and quietude or his reputation for veracity in issue, this cross-examination was unjustified and prejudicial, and that the court erred in overruling the defendant's objections thereto.

It follows that the argument of counsel for the state based on this cross-examination was erroneous and prejudicial.

After the jury had retired, it was returned to the court room on its request. The foreman asked the court whether the jury had a right to ask a question. It is urged that the court answered this question in such a way as to mislead the jury as to the scope of its right, and it does seem that the jury may have been misled.

Under §11420-6 GC, it is made the duty of the Court to give the jury any additional information on the law requested by it, and may, but it is not required to, state its recollection of the testimony upon any disputed point. The jury should be given the opportunity, which the law contemplates, to make the request.

Upon a retrial, should the occasion arise, the right of the jury for information on the law and the duty of the court to supply it should be more clearly stated.

For these reasons, the judgment is reversed and the cause remanded for further proceedings according to law.

ROSS, P. J., and HILDEBRANT, J., concur.