10

THE STATE OF OHIO, APPELLANT, *v.* PORTER, APPELLEE.

(No. 40670—Decided March 27, 1968.)

*Mr. James W. Freeman*, prosecuting attorney, for appellant.

*Mr. Russell E. Lyons*, for appellee.

O'NEILL, J. The defendant and the complaining witness were married in Michigan on October 9, 1965. The period of time covered by the indictment extended from January 30, 1966, to April 25, 1966.

This appeal raises four questions for determination by this court.

The first question presented is: In an action against a husband for nonsupport of a pregnant wife, is it reversible error for a trial court to permit the state, on cross-examination of the defendant, to attempt to impeach his credibility by showing a falsification of an application for a marriage license which he executed?

In Ohio, the scope of permissible cross-examination for impeachment of credibility of an accused has been established in large part by two early Supreme Court cases. In *Hanoff* v. *State* (1881), 37 Ohio St. 178, 180, the court said:

"The defendant, having voluntarily offered himself as a witness in his own behalf, and testified in chief, thereby subjects himself to a legitimate and pertinent cross-examination. While occupying the witness stand he was entitled to the same rights and privileges, and was subject to the same rules of evidence as any other witness."

Paragraph four of the syllabus of *Wroe* v. *State* (1870), 20 Ohio St. 460, reads as follows:

"The limits to which a witness may be cross-examined on matters not relevant to the issue, for the purpose of judging of his character and credit from his own voluntary

12

admissions, rests in the sound discretion of the court trying the cause. Such questions may be allowed when there is reason to believe it will tend to the ends of justice; but they ought to be excluded when a disparaging course of examination seems unjust to the witness, and uncalled for by the circumstances of the case." See, also, *Smith* v. *State* (1932), 125 Ohio St. 137, 180 N. E. 695; *Maranda* v. *State* (1923), 17 Ohio App. 479, 488; *O'Hara* v. *Cincinnati St. Ry. Co.* (1941), 68 Ohio App. 7, 8, 36 N. E. 2d 823; *State* v. *Kennedy* (1943), 72 Ohio App. 462, 52 N. E. 2d 873; 58 American Jurisprudence 346, Section 625; McCormick, Evidence, 62, Section 33; 3 Wigmore, Evidence (3 Ed.), 684, Section 1017.

False information was furnished by affidavit by the accused on his marriage license application. Information contained in a Michigan marriage license application is to be provided under oath, and a false statement sworn to on an application renders the affiant liable for prosecution for perjury. Sections 25.33 and 25.39, Michigan Statutes (1961 Rev.). The state sought to test the vereacity of the accused by showing the falsification. The credibility of the accused was crucial to the issue of guilt for his testimony in many respects was contrary to that of the complaining witness. As the veracity or credibility of the accused was of great significance, the inquiry of the state was pertinent. Any disparagement which resulted from this line of cross-examination resulted not from the fact that he had been married three times previously, a fact which was irrelevant in the instant trial, but resulted from the fact of the falsification itself. The jury could reasonably conclude that as the accused had lied on the marriage license application, he may have also lied in his testimony at the trial regarding the material element of nonsupport. The court, upon the defendant's objection, instructed the jury that it could consider the testimony only for its effect on the witness' veracity and not as substantive evidence in the case.

No prejudicial error was committed by the trial court

when the court permitted the state, during cross-examination of the accused, to attempt to impeach his credibility by showing a falsification of an application for a marriage license which he executed under oath.

The second question presented is: Did the trial court err by including in its general charge the sentence, "It is equally important that an innocent person should not suffer" on the ground that it created a prejudice in the minds of the jury against the accused?

The resolution of this issue turns upon a subjective interpretation of the language of the general charge.

Reversible error ordinarily can not be predicated upon one paragraph, one sentence or one phrase of the general charge. As this court held, in paragraph six of the syllabus of *Flynn* v. *Sharon Steel Corp.* (1943), 142 Ohio St. 145, 50 N. E. 2d 319:

"Where complaint is made as to a portion of the charge of the court, a reviewing court will consider all of the charge upon the particular subject complained of to determine whether prejudicial error has been committed against the party complaining."

If the general charge, considered as a whole, is not prejudicial to the objecting party, no reversible error results from a misstatement or ambiguity in a portion thereof. In paragraph eight of the syllabus in *Centrello* v. *Basky* (1955), 164 Ohio St. 41, 128 N. E. 2d 80, this court said:

"Even though a paragraph in a general charge taken by itself is improper and misleading, yet where considered in connection with the whole charge and the entire instruction of the court to the jury, it is apparent that no prejudicial error resulted, the judgment rendered on a verdict will not be reversed for such error."

See, also, *State* v. *Huffman* (1936), 131 Ohio St. 27, 1 N. E. 2d 313; *Ochsner* v. *Cincinnati Traction Co.* (1923), 107 Ohio St. 33, 140 N. E. 644; *Campbell* v. *Koerner* (App. 1935), 20 Ohio Law Abs. 441; *Cincinnati Traction Co.* v. *Dannenfelser* (1914), 3 Ohio App. 220, 20 C. C. (N. S.) 553.

In the general charge the word , "innocent," was used with reference to the defendant to indicate that the rights of an innocent accused should not be abused. The use of the words, "innocent person," implies that the word, "person," is the correlative of the word, "defendant." The sentence of the charge in dispute, when considered in the light of the general charge as a whole, is not prejudicial to the accused.

The third question for determination is: Did the Court of Appeals err in reversing the judgment of the trial court and granting the defendant a new trial on the ground that the supplemental instructions given the jury were incomplete, confusing and misleading?

During deliberations, the jury submitted the following request for additional instructions to the court:

"Need legal clarification on what constitutes the defendant's obligation to 'provide' for his wife. (1) Does he have the option to delegate this obligation to another person? (2) Is his 'obligation to provide' satisfied so long as his wife is properly provided for regardless of by whom?"

In answer to the jury's first question, the court instructed the jury:

"Now, the question is 'may he delegate this authority?' He may not delegate this authority because it is his duty made so by the statute. But he may imply [*sic*] instrumentality. For example, he might send the money to her by mail, by check, or he may employ a messenger or a friend, or something like that to supply her with money, food or clothing as required by statute."

In answer to the jury's second question, the court instructed the jury:

"Is his 'obligation to provide' satisfied so long as his wife is properly provided for regardless of by whom? That has been pretty well covered by prior opinions of the courts. And I am going to paraphrase part of what the Supreme Court of Ohio has stated: 'It is plainly the duty of the defendant to support his pregnant wife.' I am sup-

plying those words. 'And the fact that his pregnant wife had prior to the'—I am going to have to change this a bit. '—that parents or other persons had provided for his pregnant wife prior to the indictment did not absolve the defendant from his obligation in that regard. A refusal or neglect to provide the required support would, after demand was made upon him to do so, render him amenable to the provisions of the criminal statute.'

"Now, I have previously told you that a demand on her part was not required. The statute is plain on that."

Defendant objected to these instructions on the ground that they should be supplemented with respect to the husband's knowledge of the need and demand and the defendant contends that they were incomplete, confusing and misleading.

Section 2945.79, Revised Code, states that a "new trial, after a verdict of conviction, may be granted" where defendant's "substantial rights" have been "materially" affected.

A co-ordinate provision in Section 2945.83, Revised Code, reads:

"No motion for a new trial shall be granted or * * * any judgment of conviction be reversed * * * because of:
"* * *

"(D) A misdirection of the jury unless the accused was or may have been prejudiced thereby * * *."

An examination of the disputed instructions reveals that they did not prejudice any substantial right of the defendant. Even assuming that the instructions given were misleading or confusing, it was the defendant who benefited by the lack of clarity.

The request for supplemental instructions asked two related questions which, in essence, were whether a husband could satisfy his obligation under the statute by affirmative delegation to another of his duty, and whether the pregnant wife must demand support from the husband before the crime could be committed.

In pertinent part, Section 3113.01, Revised Code, pro-

vides that "no * * * husband of a pregnant woman * * *. shall fail to provide such * * * woman with the necessary or proper home, care, food, and clothing." The language of the statute makes it clear that a husband can not delegate his responsibility to another and that a demand for support, made to the husband by the wife, is not necessary.

Even if the jury could conclude, from the supplemental instructions given, that the husband might delegate his responsibility, the defendant could not have been prejudiced. Instead of adversely affecting the defendant, such a conclusion would increase the burden of proof and prejudice the state.

The trial court, in answering the jury's second question regarding the necessity of demand, apparently relied in part on the case of State v. Stouffer (1901), 65 Ohio St. 47, 60 N. E. 985. In that case, a demand for support had been made by the wife. This court, in concluding that the defendant was guilty, said that "a refusal or neglect to provide the required support after demand was made upon him to do so, rendered him amenable to the provisions of the criminal statute." The Stouffer case provides no authority for the proposition that a demand is a requirement of the statute.

This question was settled in State v. Teal (1907), 77 Ohio St. 77, 83 N. E. 304, where this court held that no demand was necessary under the statute.

The trial court, in answering the second question, after using the above-quoted language, concluded by saying "Now, I have previously told you that a demand on her part was not required. The statute is plain on that."

Any confusion which resulted from the court's answer to the second question inured to defendant's benefit and could prejudice only the state.

The defendant was not prejudiced by the trial court's supplemental instructions.

The fourth question presented to this court is: Was the admission of testimony concerning events prior to the period covered by the indictment and the admission of an

exhibit disclosing an unpaid hospital bill incurred by the complaining witness prior to the period covered by the indictment, even if erroneous, so prejudicial to the defendant as to require a new trial?

This court is of the opinion that the admission of testimony of the complaining witness concerning events prior to the period covered by the indictment was harmless. Much of that testimony was irrelevant to the charge, because it was not evidence of nonsupport, neglect or abandonment. Therefore, even if erroneously admitted, such testimony was not prejudicial to the defendant.

The admission, as an exhibit, of the unpaid hospital bill incurred for hospitalization of the complaining witness prior to the period covered by the indictment was erroneous. The unpaid bill was direct evidence of nonsupport, but not evidence of the crime of which defendant was accused. However, the defendant himself testified as to the same matters on direct examination. Therefore, viewed in the context of the whole record, this court can not say that the admission of that exhibit was prejudicial error justifying a new trial. Since the error in the admission of the testimony of the complaining witness about prior events and in the admission of the unpaid hospital bill as an exhibit were not prejudicial, the question of whether the defendant, by testifying as to the same matters, waived an objection to its admission is not presented, and this court does not pass upon that question.

For the reasons stated, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, HERBERT, SCHNEIDER and BROWN, JJ., concur.

TAFT, C. J., concurring. As to the first question discussed in the majority opinion, the record discloses that the prosecutor cross-examined the defendant, without any objection being made, concerning an application for a mar-

riage license by the defendant and the complaining witness, which had previously been admitted in evidence without objection. Defendant identified the exhibit and testified that this was a marriage license obtained by him and the complaining witness. Defendant testified further that he furnished the information stated therein as being given by him under oath. This information affirmatively disclosed that defendant had been previously married only once.

The prosecutor next asked defendant how many times he had been married. An objection to this question was overruled. Defendant's answer was that this was the fourth time he had been married.

We are not here concerned with a case where the witness either refused to answer the question objected to, or where his answer to that question was consistent with his previous testimony concerning the marriage license obtained by him and the complaining witness. In such an instance, the state could not have offered other evidence to prove the falsity of the witness' statement in the application or of his testimony that he had only been married once before his marriage to the complaining witness, since the question, as to whether he had, would not have been relevant to any issue in the case.

As stated in McCormick on Evidence (1954), 66, Section 36:

"On cross-examination we have seen that strict rules of relevancy are relaxed, and generally the trial judge in his discretion may permit the cross-examiner to inquire about any previous statements inconsistent with assertions, relevant or irrelevant, which the witness has testified to on direct or cross. At this stage, there is no requirement that the previous impeaching statements must not deal with 'collateral' matters. But * * * if the inquiry on cross-examination is as to inconsistent statements about 'collateral' matters, the cross-examiner must 'take the answer'—he cannot bring on other witnesses to prove the making of the alleged statement."

See also 3 Wigmore on Evidence (3 Ed. 1940), 701, Section 1023.