THE STATE OF OHIO, APPELLEE, *v.* MARSHALL ET AL., APPELLANTS.

(Nos. 10484, 10485, 10488 and 10489—Decided May 27, 1968.)

*Mr. Melvin G. Rueger* and *Mr. Fred J. Cartolano,* for appellee.

*Messrs. Morr & Gilday,* for appellants.

SHANNON, J. These are appeals on questions of law from the Court of Common Pleas of Hamilton County. Because the appeals involve the same alleged errors, they have been consolidated and will be considered accordingly.

The several defendants were indicted jointly for attempted burglary and possession of burglar tools and subsequently tried upon the following set of facts.

On April 15, 1967, about 1:15 a. m., a passing motorist observed two men near a building used as a pharmacy in the city of North College Hill, Hamilton County, Ohio. One of the men was standing at a door of the building and the other at the far end of it. In addition, an automobile with two more individuals was parked in an adjacent area. The motorist noted that "they were messing with the door or something," and he thereafter heard the burglar alarm ringing.

The automobile and the four individuals then left the scene, but another witness noted the license number and gave it to police officers who arrived. Investigation disclosed that a door to the pharmacy had been pried open and the alarm system activated.

Within a half hour, police of the city of Cincinnati, in the course of investigation of another burglary, stopped an automobile bearing license tags with the numbers given by the witness, which was being driven by appellant Peggy Jean Marshall. A search warrant was obtained, and in the trunk of this vehicle a quantity of clothing and tools, among which was a pry bar, was found. Testimony upon trial was to the effect that the markings upon the door of the pharmacy were made by such pry bar.

It is evidently undisputed that upon trial counsel for one of the accused indicated in opening statement that the defendants were looking for a certain highway. The only witness called by the defense collectively was the husband of appellant Marshall, who stated his wife was driving his

car for the purpose of transporting the other defendants from Louisville, Kentucky, to Columbus, Ohio, on the day in question.

The jury returned verdicts of guilty on each charge, and judgment was entered thereon.

There are three assignments of error. The first of these raises the question whether the trial court erred in failing to grant a motion for mistrial on the ground that a statement by the prosecutor, in argument, constituted comment upon failure of the defendants to testify in their own defense. The statement complained of was:

"Mr. Cartolano: I am not going to say much more, except to close by saying this: Mr. Houston told you in his opening statement that these people were not there, they were looking for I-75. I didn't hear anything about that. I heard no evidence from the witness stand of anybody looking for I-75.

"Mr. Johnson: There is an objection, if the court please. There is an objection."

Appellants contend that the remarks compel the conclusion that the prosecutor was referring to the failure of defendants to take the witness stand. With this we cannot agree.

Judging from what little there is in the record, it seems that the basic theory of the defense was alibi. However, this is predicated only upon the oblique reference, a statement by one of defense counsel, that "these people were not there, they were looking for I-75."

The sole witness for the defense did not testify as to anything referring to the actions or whereabouts of the defendants. Indeed, he could not have done so because he was not there. Counsel, then, must have abandoned the theory originally held after stating to the jury that evidence would be adduced to show that the defendants were on what would have been a legitimate errand.

The prosecution had a clear right to comment on the *state of the evidence* before the jury. It is pure speculation to say that such comment required the jury to reflect upon the failure of the defendants to testify. Where there

is some evidence produced by the defense before the triers of the facts, the prosecution may comment upon such and argue the reasonable inferences which may be drawn therefrom, and a statement that there was no evidence to support a conclusion that the accused were conducting themselves in a lawful fashion does not violate any rights guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution.

The second assignment of error is that the trial judge failed to define specific elements of the crimes charged.

It is argued that the jury was not instructed that it was the exclusive judge of all questions of fact. The judge presiding at the trial said:

"We have two separate functions. You are the trier of the facts. My sole function is to tell you what the law is."

While the language is laconic, it is clear in import. Clearly, the jury was informed that the judge advised as to law but they tried the facts. In our opinion, this was sufficient in the respect complained of.

Of greater significance is the second branch of the argument, that there was a lack of definition of the elements of the crimes. It is claimed that the judge failed to define specific criminal intent. An examination of the charge shows that the jury was charged that "* * * before you can reach a verdict of guilty, you must find beyond a reasonable doubt that the following elements: * * * 4. With intent to steal property of any value, or with intent to commit a felony * * *."

In Ballentine's Law Dictionary, Section Edition, "intend" is defined:

"To intend is to fix the mind upon; to have a design; to purpose; * * *."

Webster's New International Dictionary, Second Edition, Unabridged, states that "intend" is:

"To have in mind as a design or purpose; design; plan; purpose; * * *."

Therefore, to do something intentionally is to do it purposely, and not accidentally. The word intend has the

same meaning in its legal sense as it has in the language of the layman. No member of a jury who is capable of understanding the ordinary English in use today can be said, reasonably, not to comprehend the same language in the charge of the judge.

Certainly, while we do not recommend this part of the court's general instructions as a model, it served the purpose required of it and, absent a request from counsel for amplification when given, meets the requirements of law.

A similar rationale may be applied to the other arguments of appellants. While terse, the charge was not ambiguous in its entirety, and it is from a consideration from all four corners that we must judge it.

Paragraph two of the syllabus of *State* v. *Porter,* 14 Ohio St. 2d 10, declares:

"Where a paragraph in a general charge, by itself, is improper and misleading, but when the court's entire charge is considered it is apparent that no prejudicial error resulted, the judgment will not be reversed. (Paragraph eight of the syllabus of *Centrello* v. *Basky,* 164 Ohio St. 41, approved and followed.)"

We do not find any one part of the charge to be improper and misleading, and, therefore, the logic of *State* v. *Porter, supra,* is even more compelling. Also, it is to be remembered that from what there is of it the defense was to the effect that while *someone* committed the crimes charged the defendants at bar were not the culprits. The prime issue was, perforce, identity or implication of the defendants, and not the elements of the crimes, these having been virtually conceded.

We find, consequently, no error prejudicial to the defendants, and the judgments below must be affirmed.

*Judgments affirmed.*

Long, P. J., and Hildebrant, J., concur.