OPINION
Defendant, Lawrence E. Spurlock, appeals from his convictions and sentence for aggravated robbery, with a firearm specification, and having weapons while under disability.
On January 10, 1999, a man wearing a tan jacket, a stocking cap, and a blue bandana over his face entered a restaurant on Brown Street in Dayton and robbed its employees at gunpoint. Two Dayton police detectives, Baker and Tackett, were in the restaurant at the time. They recognized the robber from the clothing he wore as a man they had seen earlier that evening on two occasions.
When the robber fled the restaurant Baker and Tackett gave chase on foot. They briefly lost sight of the robber, but soon saw him running from a parking lot. The detectives stopped the man, who was subsequently identified as Defendant Spurlock, and arrested him.
Spurlock wore no jacket when he was arrested, though the outside temperature was three degrees below zero. He was breathing hard and perspiring, as though he'd been running. Detective Baker located the tan jacket the robber wore in the parking lot from which Spurlock had run. Along with the jacket he found a loaded semi-automatic handgun that bore chip marks similar to the one the robber used, three hundred dollars in cash, and the other items of clothing the robber wore, including a pair of white rubber gloves. The jacket and gloves bore marks of blue paint.
A search of Spurlock's person yielded a set of car keys with a Ford emblem. Baker later located a Ford Bronco that was registered to Spurlock, parked near the restaurant. Another pair of white rubber gloves that bore blue paint marks was found inside the vehicle. It was later learned that Spurlock was employed as a painter.
Spurlock was charged by indictment with two offenses: Aggravated Robbery, R.C. 2911.01(A)(1), with a firearm specification attached per R.C. 2941.145, and having weapons under disability within five years of release from post-release control arising from a prior conviction, R.C. 2923.13(A)(2) and (B). The prior conviction was for aggravated robbery.
Spurlock waived his right to a trial by jury on the weapons under disability charge, asking the court to determine the charge itself. The court found him guilty of the charge, but not within five years of his release. The jury, after hearing the same evidence except that pertaining to Spurlock's disability by reason of a prior aggravated robbery conviction, found him guilty of the aggravated robbery charge.
After the verdicts were returned, the trial judge, the Honorable Dennis J. Langer, spoke with the members of the jury, which is his usual practice. Judge Langer revealed that there was a separate charge against Spurlock, the weapons under disability charge, and that he had found Spurlock guilty of that offense. He also revealed Spurlock's prior convictions to the jury. One of the jurors, Danny Wilkerson, then volunteered that he had been aware of the weapons under disability charge. Sensing the possibility of prejudice, Judge Langer advised the attorneys of what Wilkerson had said, and scheduled a conference at which they could voir dire Wilkerson concerning the matter.
According to Wilkerson, he first learned of the weapons under disability charge against Spurlock from the printed weekly trial schedule that was posted at the court of common pleas information desk. Later, during deliberations, Wilkerson also saw a reference to the charge on a paper in the jury room, a reference that had been crossed-out of its text. Wilkerson inquired of the jury foreman what it meant, but got no response. Until he heard Judge Langer's explanations, he never knew what it meant. Further, because the reference had been crossed out of the paper he saw, Wilkerson had ignored it. Wilkerson stated, unequivocally, that whatever the charge or its existence might mean, it had no bearing on his decision to find Spurlock guilty on the aggravated robbery charge.
A subsequent inquiry by Judge Langer indicated that the document which found its way into the jury room was, most likely, a proposed jury instruction on the weapons under disability charge that was abandoned when Spurlock elected to have the charge tried to the court instead of to the jury. Apparently, the document was inadvertently included among the written instructions the jury was provided.
Spurlock filed a motion for new trial based on Wilkerson's revelations. The case was then transferred to a different common pleas judge for determination. Spurlock subsequently supplemented his motion with affidavit of Juror Wilkerson and the deposition testimony of Judge Langer, his bailiff, Julene Powers, and his court reporter, Terrie Godsey.
The trial court denied Spurlock's motion for a new trial. The court held that it was prohibited by Evid.R. 606(B) from considering Wilkerson's affidavit testimony absent evidencealiunde, that is, independent evidence probative of the same manner from a non-jury source. The court also held that, even if Wilkerson's affidavit is considered, no prejudice was demonstrated.
Spurlock was sentenced to multiple terms of imprisonment totaling ten years. He filed a timely notice of appeal.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED BY OVERRULING DEFENDANT-APPELLANT'S MOTION FOR A NEW TRIAL.
 Crim.R. 33.1(A)(1) states that an error or irregularity in the trial proceedings may be grounds for a new trial if the irregularity is one "affecting materially (the defendant's) substantial rights." The error or irregularity concerned must be such that the defendant was denied a fair trial. State v. Waddy (1992), 63 Ohio St.3d 424. Only when the defendant can show that prejudice flowed from the error or irregularity may a defendant's motion for new trial be sustained. State v. Porter (1968), 14 Ohio St.2d 10.
Spurlock argued that Wilkerson's knowledge of the weapons under disability charge, which was not before the jury, affected the validity of the jury's guilty verdict on the aggravated robbery charge. Spurlock's use of Wilkerson's affidavit for that purpose is governed by Evid.R. 606(B), which states:
 Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes.
 Evid.R. 606(B) governs the competency of a juror to testify at a subsequent proceeding concerning the original verdict. It operates as a general bar to evidence of that kind, with but two exceptions. The first is the "evidence aliunde rule, which permits juror testimony showing that extraneous prejudicial information was considered by the jury or that external influence was brought to bear on the jury when that evidence is offered in order to impeach the verdict, but only after prima facie proof of the matter has been presented from other sources. The second exception pertains to claims "concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court," for which evidence aliunde is not required.
The trial court denied Spurlock's motion for new trial on a finding that there was no evidence aliunde offered in support of the motion to render juror Wilkerson competent to testify concerning the matters involved, which he had stated by affidavit. Spurlock argues on appeal that evidence aliunde was presented in the form of the court reporter's deposition testimony and a representation of his trial counsel. He also argues that the presence in the jury room of the draft jury instruction which revealed the weapons under disability charge is an "impropriety" for which, per Evid.R. 606(B), evidence aliunde is not required.
Spurlock's trial counsel, Robert Berger, stated in a memorandum in support of Spurlock's motion that he "diligently searched the records and on the 14th of June it was determined that the juror did in fact have the additional first draft of the jury instructions." This was essentially confirmed by the court reporter, Terrie Godsey, who stated in her deposition that she and Attorney Berger located the draft instruction as he had described. Ms. Godsey further stated that she had seen the draft instruction in the jury room.
Prima facie evidence is that which is sufficient on its fact to prove the matter involved and the proposition of law for which it is offered. Neither Godsey's deposition statement nor Berger's representation, which must be accepted as true, demonstrate that juror Wilkerson saw the draft instruction, much less that his vote on the verdict was affected by it. Therefore, the statements of those other two witnesses is not evidence aliunde which renders juror Wilkerson competent to testify, and the trial court was correct in so finding.
Evidence aliunde is not required to prove "any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court." Evid.R. 606(B). The term improprieties isnot defined. In order to arrive at a definition, we will applythe textual canon for statutory interpretation noscitur a sociis: that is, to interpret a general term to be similar to more specific terms in a series. The other matters mentioned in the series set out in Evid.R. 606(B), threats or bribes, are intentional acts of wrongdoing. We interpret the term "improprieties" as it is used there to have a like meaning.
Neither the weekly trial schedule posted at the court's information desk nor the rejected instruction that found its way into the jury room, from which juror Wilkerson obtained information concerning the weapons under disability charge, portray or even suggest intentional wrongdoing by an officer the court. The weekly trial schedule contained more information than was required by identifying the charges on which criminal offenders had been indicted.[1] We are advised that the practice has been discontinued. The rejected instruction was most likely included inadvertently with other papers the court allowed the jury to have. No different interpretation is reasonably possible on the basis of the evidence presented.
Finally, and perhaps most significantly, juror Wilkerson stated that he did not understand the meaning of the information he says he had and was not influenced by it. This demonstrates that no error or irregularity occurred which materially affected Spurlock's substantial rights. Crim.R. 33(A)(1). There is no basis to find that he was denied his right to a fair trial, Statev. Waddy, supra, or that he was prejudiced in any way. State v.Porter, supra.
The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED BY ENTERING JUDGMENT AGAINST A DEFENDANT WHO SUFFERED INEFFECTIVE ASSISTANCE OF COUNSEL.
 The Sixth Amendment right to counsel implies the corresponding right to the effective assistance of counsel. The assistance that counsel provides will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice results. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must demonstrate that, were it not for counsel's errors, the result of the trial would have been different. Strickland v. Washington (1984), 466 U.S. 668. State v. Bradley (1989), 42 Ohio St.3d 136.
Spurlock argues that his trial counsel was constitutionally ineffective when he requested a continuance of the trial. Counsel explained that a transcript of a prior proceeding in Dayton Municipal Court concerning the charges against Spurlock was not yet ready, and that he needed the transcript in order to represent Spurlock effectively at trial. The trial court granted counsel's request, over Spurlock's own objection that he did not want a continuance.
The continuance that was ordered tolled the statutory speedy trial time within which the State was required to bring Spurlock to trial. State v. Stamps (1998), 127 Ohio App.3d 219. Spurlockis bound by the waiver of his speedy trial time even though it wasordered without his consent. State v. McBreen (1978),54 Ohio St.2d 315.
Spurlock could have been prejudiced by the continuance his attorney sought and obtained; he might have moved for discharge pursuant to R.C. 2945.78 had the State not brought him to trial within the shorter time otherwise required. However, that is speculative. Further, even if Spurlock was prejudiced in that regard, counsel's stated reason for the continuance he requested portrays no failure of any essential duty he owed Spurlock. Indeed, counsel might have failed in his duty had he proceeded to trial without the transcript concerned.
Spurlock also argues that his attorney failed in an essential duty because he didn't ask for a hearing on the motion for new trial that he filed on Spurlock's behalf. As a consequence, the court determined the motion and the grounds for it on the basis of the affidavit and depositions that were submitted.
Motions for new trial must be supported by evidence which portrays operative facts demonstrating the grounds for relief alleged. If that evidence, in the form of affidavits, depositions, or transcripts, fails to portray such operative facts, no further hearing to determine their existence is required.
The affidavit and depositions that Spurlock presented in support of his motion for a new trial failed to portray operative facts demonstrating the grounds alleged, as we have previously found. (See First Assignment of Error). Spurlock was not entitled to a hearing on his motion. Spurlock was not prejudiced by counsel's failure to request one.
The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED BY ADMITTING OVER DEFENDANTS' OBJECTION A PHOTOGRAPH OF GLOVES IN DEFENDANT'S VEHICLE.
 Over Spurlock's objection, the trial court permitted the State to offer a photograph of the white rubber gloves that police found inside Spurlock's vehicle. Those gloves were similar to gloves that police found, along with the cash taken in the robbery and the weapon used, in the parking lot from which Spurlock had run when he was arrested.
Spurlock relies on Cincinnati, Hamilton Dayton Railway Co. v.De Onzo (1912), 87 Ohio St. 109, which held:
 It is not error for the court, on the trial of a cause, to admit in evidence a photograph which appears to have been accurately taken, and is proven to be a correct representation of the subject in controversy which cannot itself be produced, or of some subject incident to it, and is of such a nature as to throw light upon the disputed point.
 De Onzo applied the common law "best evidence rule," which permits introduction of secondary evidence if the original is unavailable through no fault of the proponent of the evidence. The rule is codified by Evid.R. 1001 through Evid.R. 1008. It provides that the original writing, recording, or photograph is required to prove its contents. Evid.R. 1002. The rule thus applies only to evidence which in its original form is a writing, recording, or photograph. "Where, however, a photograph of an item, itself not a writing, recording or photograph, is available to prove the appearance of the item, the best evidence rule does not operate to prefer the photograph over other evidence. Proof of the appearance of the object of the photograph is not subject to the best evidence rule." Weissenberger's Ohio Evidence, Treatise (2000), Section 1001.14.
The State offered the photograph to prove the appearance of the gloves that, according to the testimony of police officers, were found in Spurlock's vehicle. The best evidence rule did not require the gloves themselves. Therefore, the trial court did not err when it admitted the photograph in evidence, absent proof that the gloves themselves were unavailable.
The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR TRIAL COURT ERRED BY ENTERING JUDGMENT CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
 A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin
(1983), 20 Ohio App.3d 172, 175:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the fact finder lost its way. State v. Bradley (October 2, 1997), Champaign App. No. 97-CA-03, unreported.
Spurlock argues that his conviction is against the manifest weight of the evidence because his identity as the robber was not proved by the circumstantial evidence offered by the State for that purpose. Spurlock points out that the two employees of the restaurant who were the victims of the robbery could not identify him as the robber. Moreover, defense witnesses testified that they did not recognize clothing that police discovered near the crime scene as clothing Spurlock typically wears. According to Spurlock, in the course of chasing the robber police lost sight of their quarry and mistakenly stopped Spurlock, who just happened to be walking through the area at the time. The evidence presented by the States demonstrates otherwise.
Direct and circumstantial evidence have the same probative value. State v. Jenks (1991), 61 Ohio St.3d 259. The identity of Spurlock as the robber was based upon both direct and circumstantial evidence. Detective Baker was present inside the restaurant when the robbery occurred and he positively identified Spurlock as the robber.
Prior to the robbery, Detectives Baker and Tackett had seen Spurlock several times that night. The clothing Spurlock wore was the same clothing that the two victims and Detectives Baker and Tackett observed the perpetrator wearing at the time of this robbery. Much of that same clothing, the tan jacket, a black stocking cap, a dark blue bandana, and a pair of white rubber gloves, were found in a parking lot from which Spurlock had run from just moments before police apprehended him. Police also found the semi-automatic handgun with chips on the barrel used in this robbery and three hundred dollars in cash. The tan jacket and white rubber gloves had blue paint on them consistent with the paint used at Spurlock's place of employment at the time of this robbery.
When Detective Baker first made eye contact with Spurlock as he was running from the parking lot, Spurlock immediately slowed to a walk. It was obvious that Spurlock had been running. He was breathing hard and sweating, and he had no coat on despite the fact that the temperature was three degrees below zero.
As the trier of fact, it was for the jury to decide which witnesses to believe and the weight to be given to their testimony. State v. DeHass (1967), 10 Ohio St.2d 230. In reviewing this entire record we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice occurred. Spurlock's conviction is not against the manifest weight of the evidence.
The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
BROGAN, J. and YOUNG, J., concur.
[1] Those who are enthused about information kiosks in courthouses might take note of this.