DECISION AND JUDGMENT ENTRY
{¶ 1} James L. Pigg appeals his robbery conviction, raising four arguments. First, he contends that the trial court erred by failing to instruct the jury on all elements constituting a robbery offense. Because the court's jury instructions as a whole adequately informed the jury of the essential elements of a robbery conviction under R.C. 2911.02(A)(2), Pigg's first argument is meritless.
 {¶ 2} Second, Pigg argues that the trial court erred by admitting store receipts into evidence since the state did not establish that the handwriting on the receipts belonged to Pigg. Because the state offered testimony of an eyewitness who observed the transaction that produced the receipts, it produced sufficient evidence of authentication. Thus, the trial court did not abuse its discretion by admitting them into evidence. Furthermore, any error in admitting the receipts was harmless because the state had independent evidence that Pigg was the perpetrator.
 {¶ 3} Third, Pigg contends that his conviction is against the manifest weight of the evidence since the state's witnesses were not credible. Because nothing in the record suggests that the state's witnesses were unworthy of belief, the jury was entitled to credit their testimony, which constituted competent and credible evidence that Pigg committed the robbery. Thus, Pigg's conviction is not against the manifest weight of the evidence.
 {¶ 4} Finally, Pigg asserts that the state failed to present sufficient evidence that while fleeing immediately after a theft offense, he inflicted or intended to inflict physical harm. The evidence that Pigg hit a store security officer with his car sufficiently demonstrates that Pigg inflicted or attempted to inflict physical harm. Moreover, at the time, Pigg was fleeing the store after stealing items. Therefore, sufficient evidence supports his conviction, and we affirm the court's judgment.
 {¶ 5} On May 10, 2002, two men walked into a Lowe's Home Improvement Warehouse and took three cameras. One of the men placed two of the cameras down the front of his pants, while the other did the same with the remaining camera. A Lowe's security officer observed this transpire and followed the two men out of the store. The two men entered their vehicle as the security officer told them to stop and return the merchandise. The driver of the vehicle started the car and ran into the security officer. Pigg subsequently was arrested and identified as the driver of the vehicle. The Scioto County Grand Jury later returned an indictment charging Pigg with robbery, in violation of R.C. 2911.02(A)(2).
 {¶ 6} At trial, Kenneth Ekleberry, a manager in the electrical department at Lowe's, stated that on May 10, 2002, he observed Pigg in the "security aisle" of the store, the aisle where security cameras and the like are displayed. Ekleberry positively and without hesitation identified Pigg as the man he saw that day.
 {¶ 7} Lowe's Loss Prevention and Safety Manager John J. Stewart stated that he saw Pigg in the store on May 5, 2002, returning items. He stated that he got a "good look" at Pigg. He saw Pigg again on May 10, 2002. He saw Pigg take two security cameras and place one down the front of his pants and another individual with Pigg place the other down his pants. Pigg then grabbed another camera and placed it down his pants. Stewart followed them and they exited the store. Pigg and his accomplice got in their car before Stewart was able to stop them. Stewart stepped in front of the car and told them that he was security and that they needed to return the merchandise. Stewart stated "the next thing [Pigg] hammers the gas and throws it in gear and drops the clutch and I am rolling off the hood. He actually hit me, and I rolled off his hood." Stewart stated that although he did not suffer any injuries, he was a little sore the next day.
 {¶ 8} During Stewart's testimony, the state sought to introduce return receipts that Pigg allegedly signed. Pigg objected, arguing that the state offered no handwriting expert to state that the signature belonged to Pigg. The state asserted that Pigg gave identification when returning the items and that Stewart testified to this "as a basis of knowing the name of a particular individual that returned these items on that day. He saw him do it. He saw him return them, and he is the same individual that he sees come in five days later and commit this offense." The court decided to allow the state to introduce the receipts.
 {¶ 9} Stewart stated that whoever returned the items on the receipt presented an Ohio's driver's license. He identified Pigg as the person who signed the receipts and stated that Pigg is the same person he saw on May 10, 2002. He additionally testified that he remembered Pigg: "You know, the way I see it, when someone points a loaded gun at you, you remember what they look like. And that is the way I took it. He tried to run over me with a car, so I remember who he was." Stewart explained that he used the receipts to learn the perpetrator's name.
 {¶ 10} Stewart further testified that after Pigg's arrest, he saw Pigg at the courthouse and heard him say to two female acquaintances, "I am going to get out of this because I am going to get you two to testify that I was with you on that day."
 {¶ 11} After the state rested, Pigg presented three witnesses, each of whom claimed to have seen Pigg on May 10, 2002. Tina L. Osborne stated that she saw Pigg at her mother's house on the date of the incident. Peter D. Eldridge, Pigg's uncle, stated that he was with Pigg from 11:00 a.m. until after dark. Eldridge's ex-wife stated that she also saw Pigg and that he came to her house for dinner sometime before 6:00 p.m.
 {¶ 12} After the court finished instructing the jury, both the prosecutor and defense counsel indicated that they were satisfied with the court's instructions. Pigg did not object to any part of the court's instructions.
 {¶ 13} The jury subsequently found Pigg guilty and the trial court sentenced him to a six-year prison term.
 {¶ 14} Pigg timely appealed the trial court's judgment and assigns the following errors:
First Assignment of Error
The court erred in instructing the jury on the elements of the offense of robbery.
Second Assignment of Error
The court erred in admitting into evidence the receipts used to identify the appellant.
Third Assignment of Error
The verdict is against the manifest weight of the evidence.
Fourth Assignment of Error
The evidence is insufficient to support the verdict.
 I {¶ 15} In his first assignment of error, Pigg argues that the court failed to properly instruct the jury regarding the elements of robbery. He contends that the court erred by failing to instruct the jury on all of the elements constituting the underlying theft offense and by failing to follow the pattern Ohio Jury Instructions. He asserts that the court failed to instruct the jury on "concurrence," "physical harm," and "force." Pigg additionally argues that the court's "knowingly" instruction, immediately followed by a "purposely" instruction confused the jury. He admits that he did not object to the instructions, but asserts that they amount to plain error.
 {¶ 16} Because Pigg did not object to any part of the court's robbery instruction, he can prevail only if the trial court's instructions show plain error. See Civ.R. 30(A) (stating that a party may not assign as error on appeal the giving of a jury instruction "unless the party objects before the jury retires to consider its verdict * * *"). "Plain error is an obvious error * * * that affects a substantial right." Statev. Yarbrough (2002), 95 Ohio St.3d 227, 224, quoting State v. Keith
(1997), 79 Ohio St.3d 514, 518, 684 N.E.2d 47. An alleged error constitutes plain error only if the error is "obvious" and, but for the error, the outcome of the trial clearly would have been different. Id. "[N]otice of plain error is taken with utmost caution only under exceptional circumstances and only when necessary to prevent a manifest miscarriage of justice." State v. Martin, Franklin App. No. 02AP-33, 2002-Ohio-4769, at ¶ 28, quoting State v. Hairston (Sept. 28, 2001), Franklin App. No. 01AP-252, and State v. Lumpkin (Feb. 25, 1990), Franklin App. No. 91AP-567. In this case, the circumstances do not warrant application of the plain error doctrine.
 {¶ 17} Generally, a trial court should give a requested jury instruction if it is a correct statement of the law as applied to the facts of that particular case. Murphy v. Carrollton Mfg. Co. (1991),61 Ohio St.3d 585, 591, 575 N.E.2d 828. R.C. 2945.11 requires a trial court to charge the jury with all the law required to return a verdict.State v. Mitchell (1989), 60 Ohio App.3d 106, 108, 574 N.E.2d 573. The refusal to give a requested jury instruction is reversible error only if the instruction was a correct statement of the law, was not covered by other instructions, and the failure to give the instruction impaired the theory of the case of the party requesting it. Alford v. Nelson (Oct. 12, 1994), Jackson App. No. 93CA720. However, reversible error should not be predicated upon one phrase or one sentence in a jury charge; rather, a reviewing court must consider the jury charge in its entirety. State v.Porter (1968), 14 Ohio St.2d 10, 13. While the wording and form of an instruction are within the trial court's sound discretion, the court must charge on all relevant questions of law that the evidence presents. Thus, we review the issue of whether the court erred by not giving any instruction at all as a question of law. Murphy, supra; see, also, by way of analogy, State v. McCarthy (1992), 65 Ohio St.3d 589, 593,605 N.E.2d 911; Cincinnati v. Epperson (1969), 20 Ohio St.2d 59,253 N.E.2d 785, paragraph one of the syllabus; State v. Powell (Sept. 29, 1997), Ross App. No. 96CA2257; McLaughlin v. Lowman (May 6, 1997), Pike App. No. 96CA572.
 {¶ 18} In defining the elements of a crime to a jury, the relevant statute is the most logical starting point. Here, the state charged Pigg with robbery under R.C. 2911.02(A)(2), which provides: "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: * * * (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]"
 {¶ 19} In this case, the trial court gave the following instruction on robbery to the jury:
The Defendant is charged with robbery. Before you can find the defendant guilty of robbery you must find beyond a reasonable doubt that * * * the defendant did in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense, inflict, attempt to inflict or threaten to inflict physical harm on another.
An attempt occurs when a person knowingly engages in conduct which, if successful, would result in the commission of this offense.
Before you can find that the defendant was committing a robbery, you must find beyond a reasonable doubt that the defendant with purpose to deprive the owner Lowe's of property, knowingly obtained the property without the owner's consent.
* * * *
Purpose is an essential element of the crime of Robbery and Theft. A person acts purposely when it is his specific intention to cause a certain result. It must be established in this case that at the time in question there was present in the mind of the defendant a specific intention to deprive Lowe's of property without the consent of the owner.
When the central idea of the offense is a prohibition against forbidding of conduct of a certain nature, a person acts purposely if his specific intention was to engage in conduct of that nature, regardless of what he may have intended to accomplish by his conduct.
Knowingly is an essential element in the crime of Robbery and Theft. A person acts knowingly regardless of his purpose when he is aware that his conduct will probably cause a certain result. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
 {¶ 20} Pigg complains that the court's jury instruction failed to adequately inform the jury of all the elements needed to support a robbery conviction. He asserts that the court did not fully instruct the jury on the elements of a theft offense, on "concurrence," on physical harm, or on force.
 {¶ 21} First, we reject Pigg's argument that the court should have instructed the jury regarding force. The state did not charge Pigg with using force during the robbery. See R.C. 2911.02(A)(3). Thus, force was not an element needed to convict Pigg and the court had no duty to so instruct the jury.
 {¶ 22} Second, the court's instruction sufficiently advised the jury as to the "concurrence" element, which mandates that the act of inflicting or attempting to inflict physical harm occur during or immediately after the theft offense. See 4 OJI 511.02(4). The court stated that the jury must find that Pigg inflicted or attempted to inflict physical harm during or while fleeing immediately after the theft offense. This instruction plainly indicated to the jury that it needed to find the element of "concurrence." We have found no requirement that the court use the exact word "concurrence" when defining the crime of robbery.
 {¶ 23} Third, the physical harm element was self-evident and the court had no duty to instruct the jury on a matter within its common knowledge. See State v. Riggins (1986), 35 Ohio App.3d 1, 8,519 N.E.2d 397 (stating that if the term is one of common usage and is actually used in that sense, the failure to define the term does not mandate a reversal).
R.C. 2901.01(A)(3) defines physical harm to persons as "any injury . . . regardless of its gravity of duration." While it would have been better for the court to give this definition, we believe common knowledge and human experience enabled the jury to determine whether trying to run a person down with an automobile is an act capable of causing physical harm.
 {¶ 24} Fourth, the court's instruction on the underlying theft offense adequately informed the jury of the requirements of a theft offense,[3]
even if the court did not define, in detail, each and every element. The term "theft" is a matter within the jury's common knowledge. See Statev. Watkins, Franklin App. No. 01AP-1376, 2002-Ohio-5080 ("Although the term theft is statutorily defined, it is a term of common usage and is used in the statute in its ordinary sense."). Moreover, the court instructed the jury that before it could find Pigg guilty of robbery, it had to find that Pigg "with purpose to deprive the owner of Lowe's of property, knowingly obtained the property without the owner's consent." This comports with the definition of theft under R.C. 2913.02(A)(1).
 {¶ 25} While the court's jury instructions may not mirror the pattern instructions, there is no requirement that the court give the exact instructions suggested in the pattern instructions. See State v. Garner
(June 18, 1998), Franklin App. No. 97APA-07-878. Instead, "[a]ll that is required is that the instructions are sufficiently clear to apprise the jury of the law and permit them to apply the law to the facts of the case." Id.
 {¶ 26} Finally, we see nothing within the court's "purposely" or "knowingly" instruction that would have confused the jury and Pigg does not elaborate upon how the instruction did so. As a whole, the court's instructions sufficiently apprised the jury of the elements necessary to convict Pigg of robbery.
 {¶ 27} Consequently, we overrule Pigg's first assignment of error.
 II {¶ 28} In his second assignment of error, Pigg contends that the trial court abused its discretion by allowing the state to introduce certain store receipts to identify Pigg as the offender. He asserts that the state did not authenticate the store receipts and that the receipts contain inadmissible hearsay.
 {¶ 29} Relevant evidence is admissible unless an Ohio statute, the Ohio or United States Constitution, or a Court Rule establishes a basis for exclusion. Evid.R. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401.
 {¶ 30} Generally, the admission or exclusion of relevant evidence rests within the trial court's sound discretion and we will not disturb its decision absent an abuse of discretion. State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus; Statev. Reed (1996), 110 Ohio App.3d 749, 752, 675 N.E.2d 77. An abuse of discretion consists of more than an error of judgment; it connotes an attitude of the trial court that is unreasonable, unconscionable, or arbitrary. State v. Lessin, 67 Ohio St.3d 487, 1993-Ohio-52, 620 N.E.2d 72;Rock v. Cabral (1993), 67 Ohio St.3d 108, 616 N.E.2d 218. When applying the abuse of discretion standard, we are not free to merely substitute our judgment for that of the trial court. In re Jane Doe I (1991),57 Ohio St.3d 135, 566 N.E.2d 1181, citing Berk v. Matthews (1990),53 Ohio St.3d 161, 559 N.E.2d 1301.
 {¶ 31} Proof of a writing's authenticity is necessary as a condition precedent to its admission into evidence. Steinle v. Cincinnati (1944),142 Ohio St. 550. Evid.R. 901(A) is the general provision governing authentication. It provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The authentication requirement imposes on the party offering an item of evidence the burden of proving that the item of evidence is what it purports to be.
 {¶ 32} Here, appellant objected at trial to the receipts, complaining that the state did not offer any evidence to show that the handwriting was Pigg's signature. Contrary to Pigg's argument, the state offered sufficient proof that Pigg had signed the receipt. Stewart testified that he witnessed the transaction when Pigg returned the items and learned that Pigg used an Ohio driver's license to show his identity. Under Evid.R. 901's liberal standard, this evidence sufficiently shows that the item is what the state purported it to be: a return receipt that Pigg signed.
 {¶ 33} Even if the court erred by admitting the receipts, the error was harmless. The state did not need to use the receipts to prove that Pigg was the perpetrator. Stewart independently identified Pigg as the person he followed from the store and as the person who hit him with the car. Although the receipts apparently provided Stewart with Pigg's name, they were not what allowed Stewart to physically identify the person who committed the offense. Stewart clarified that he physically identified Pigg not from the return receipts, but from having contact with him on May 10, 2002.
 {¶ 34} Pigg also asserts that the receipts contain inadmissible hearsay. However, because he did not raise this argument during the trial court proceedings, we will not consider it on appeal. See Stores RealtyCo. v. Cleveland (1975), 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (stating that a party cannot raise new arguments for the first time on appeal). Nor do we believe it amounts to plain error in light of the totality of the state's evidence. Accordingly, we overrule Pigg's second assignment of error.
 III {¶ 35} In his third assignment of error, Pigg asserts that his conviction is against the manifest weight of the evidence. He complains that the state's witnesses were not credible in identifying him as the perpetrator.
 {¶ 36} When considering whether a conviction is against the manifest weight of the evidence, our role is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998),84 Ohio St.3d 180, 193, 702 N.E.2d 866. We sit, essentially, as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting Tibbs v. Florida (1982),457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652. We must dutifully examine the entire record, weighing the evidence and considering the credibility of witnesses, but keeping in mind that credibility generally is an issue for the trier of fact to resolve. State v. Thomas (1982), 70 Ohio St.2d 79,80, 434 N.E.2d 1356; State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. We may reverse the conviction only if it appears that the fact finder, in resolving evidentiary conflicts, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, 78 Ohio St.3d at 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Conversely, we will not reverse a conviction if the state presented substantial evidence upon which the trier of fact could reasonably conclude that all essential elements of the offense had been established beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132, syllabus.
 {¶ 37} In this argument, Pigg does not dispute the fact that the state's case produced the elements of the offense, but instead challenges the credibility of the state's witnesses. He asserts that his witnesses who provided him with an alibi were more credible. We find nothing in either of the state's witnesses' testimony that suggests the jury lost its way in assessing their credibility. Both witnesses, without hesitation, positively identified Pigg as the perpetrator. Stewart stated that when he saw Pigg on May 10, 2002, he recognized him from May 5, 2002, when he returned some items to the store. Stewart also stated that he observed Pigg during the events of May 10, 2002, including when Pigg hit Stewart with the car. Stewart explained that he would not likely forget the face of a person that hit him with a car. Ekleberry also identified Pigg as the perpetrator and explained that he remembered who Pigg was because of the May 10, 2002 incident. The jury was entitled to believe their testimony and to disbelieve Pigg's alibi witnesses. SeeState v. Awan (1986), 22 Ohio St.3d 120, 123, 489 N.E.2d 277, 280 ("The choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact."). Accordingly, we overrule Pigg's third assignment of error.
 IV {¶ 38} In his fourth assignment of error, Pigg contends that the state did not present sufficient evidence that while fleeing immediately after the theft offense, he inflicted, attempted to inflict, or threatened to inflict physical harm. He further complains that the state failed to show that he inflicted physical harm or that he intended to inflict physical harm.
 {¶ 39} When reviewing the sufficiency of the evidence, we examine the evidence admitted at trial to determine whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citingJackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 40} Here, the state presented sufficient evidence that Pigg inflicted, attempted to inflict, or threatened to inflict physical harm while fleeing immediately after the theft offense. Stewart testified that while Pigg was fleeing, Pigg hit him with the vehicle. This evidence shows that Pigg attempted to inflict physical harm while fleeing immediately after the theft offense. Pigg's claim that R.C. 2911.02(A)(2) requires the state to prove actual physical harm is meritless. The statute clearly states that a robbery offense includes the attempt to inflict physical harm. In this case, clearly, hitting another with a vehicle constitutes an attempt to inflict physical harm, whether or not such harm actually results. Moreover, physical harm to persons includes "any injury . . . regardless of its gravity or duration." R.C.2901.01(A)(3). Stewart testified that he was sore the next day after being struck by the vehicle. Therefore, we overrule appellant's fourth assignment of error and affirm the trial court's judgment.
Judgment Affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Kline, J.: Concur in Judgment and Opinion.
[3] R.C. 2913.02 sets forth the offense of theft as follows:
(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
(1) Without the consent of the owner or person authorized to give consent;
(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
(3) By deception;
(4) By threat;
(5) By intimidation.